### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:25-cr-400-ABJ |
| OSMAN MOHAMED, | ) | |
| Defendant. | ) | |

### <u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>

### I. INTRODUCTION

Osman Hassen Mohamed is 33 years old. Born in Arlington, Virginia, he grew up in a high-crime neighborhood where drugs were part of the landscape before he was a teenager. For the better part of a decade, he has cycled through the justice system on offenses rooted in a substance use disorder that was never clinically treated. He has pleaded guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), accepted responsibility without equivocation, and fulfilled every obligation of his pretrial release. His mother, diagnosed with eye disease and recovering from a recent stroke, depends on him for her daily care. And since January 2026, for the first time in his adult life, he is receiving structured clinical treatment for the substance use disorder that has shaped the course of his life.

Mr. Mohamed respectfully asks this Court to impose a sentence of thirty-six months of probation with special conditions of six months of home detention, six months of intermittent confinement, and 120 hours of community service, together with continuation of his active treatment at the Arlington County Department of Human Services. Under *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), the advisory Sentencing Guidelines are one factor that this Court

must weigh under 18 U.S.C. § 3553(a). The question is what sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing for this particular defendant. For the reasons set forth below, the answer is not a federal penitentiary.

## II. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

On September 5, 2025, Mr. Mohamed was seated alone in his registered vehicle, parked in the NoMa neighborhood of Washington, D.C. A search revealed a loaded Smith & Wesson M&P 40 Shield handgun hidden beneath the rear passenger floor mat, approximately 300 grams of marijuana, 119 Oxycodone tablets, a digital scale, and $1,402.45 in cash. Mr. Mohamed pled guilty to possession of the firearm as a convicted felon. That is a serious federal offense, and this memorandum does not suggest otherwise.

The Court may, however, take account of the context. The marijuana was legal for personal use in the District of Columbia, and Mr. Mohamed held documented medical marijuana licenses in Virginia, California, and Colorado, obtained in connection with chronic pain from prior stab wounds. The 119 Oxycodone tablets, while serious in the aggregate, cannot be fully understood apart from the opioid dependency that began with a lawful prescription and that is now being addressed in active clinical treatment. The nature and circumstances of this offense describe a man in the grip of a longstanding substance use disorder, not a calculating, predatory criminal.

## III. THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

A. Physical Injury as the Foundation of Substance Use Disorder

Mr. Mohamed's relationship with controlled substances is the documented medical consequence of serious physical trauma sustained over a decade. In April 2016, he was

stabbed in the right chest and shoulder, a wound that penetrated the deltoid muscle, documented by CT angiography at VHC Health/Arlington Hospital. In 2018, he was stabbed again, three times in the right shoulder. A physician prescribed Percocet, an appropriate medical response. When that prescription ended, his opioid dependence, now physiologically established, did not. He began obtaining and consuming Percocet without a prescription, taking two to three tablets daily from approximately 2018 through his arrest. When he was arrested on September 5, 2025, he experienced opioid withdrawal symptoms, as he was then taking three to five tablets a daily.

In March 2025, he was treated at Inova Alexandria Hospital following a motor vehicle collision, where pelvis imaging revealed degenerative changes consistent with accumulated physical trauma. Morphine was administered in the emergency department. Two months later, a right knee injury from a scooter accident required a cast and resulted in a residual limp he carries today. This is the physical context: a man in chronic pain who became dependent through a pathway that began with a physician's prescription and compounded through subsequent injury.

## B. A Criminal History Driven by Marijuana

Mr. Mohamed's criminal history score of six places him in Criminal History Category III. The Court is respectfully asked to look carefully at what that record contains, because it tells a story that the category alone does not.

Of the five matters generating his criminal history score, marijuana is the central and nearly exclusive driver. His first conviction, at age twenty, was for misdemeanor marijuana possession in Arlington County. His second, at age twenty-two, was for marijuana possession in Trinity County, California, a state that has since legalized

marijuana entirely. His third set of charges included Oxycodone and marijuana possession from a single encounter. His fourth and fifth matters were Arlington County marijuana possession convictions. Virginia decriminalized simple marijuana possession in 2020. California legalized it entirely. Two of the five matters involved conduct that would not be criminal today in the jurisdictions where it occurred.

The one felony conviction that renders Mr. Mohamed a prohibited person under §922(g)(1) (the Arlington County Oxycodone case) is itself the product of the same substance use disorder that underlies his entire record. That case was initially resolved through a deferred disposition. It failed not because Mr. Mohamed committed crimes of violence, but because he could not stop using marijuana and did not comply with supervision conditions. He was revoked and resentenced in December 2023, discharged from probation on December 2, 2024, nine months before the instant offense. The Court should understand this record not as a recidivist's contempt for the law, but as a decade-long chronicle of untreated substance use disorder cycling through a supervision system that provided surveillance without treatment.

The Sentencing Commission has recognized precisely this problem. Under the recently deleted USSG §4A1.3[1], as amended by Amendment 821 effective November 1, 2023, a downward departure was warranted where a defendant's criminal history points are attributable to prior marijuana possession sentences. See *USSC, Weighing the Impact of Simple Possession of Marijuana 2 (Jan. 2023)*. The Court retains the authority,

---

[1] Section 4A1.3 of the U.S. Sentencing Guidelines, which governed grounds for departure based on Criminal History, was deleted effective November 1, 2025, by amendment 836. This was done to align with the post-Booker shift away from guideline-based departures toward sentencing variances under 18 U.S.C. § 3553(a), aiming for an outcome-neutral update that simplifies the guidelines while maintaining judicial discretion.

however, under the § 3553(a) factors, to give reduced weight to a Criminal History Category that rests substantially on that foundation.

The PSR also lists a 2018 arrest in Arlington County for shooting a firearm within 1,000 feet of a school and multiple counts of attempted malicious wounding. The record shows the outcome: after trial, Mr. Mohamed was acquitted on all charges. A verdict of acquittal is a finding of not guilty. That arrest does not constitute criminal conduct and should receive no weight in the Court's assessment of Mr. Mohamed's dangerousness.

### C. Treatment That Is Working

The most compelling evidence before this Court is not found in the PSR's criminal history section. It is found in the Arlington County Department of Human Services Substance Use Client Status Report, prepared by Liz Stratton, LCSW, dated April 3, 2026. See Arlington County Department of Human Services, Substance Use Client Status Report, Client ID 1025962 (Liz Stratton, LCSW, Apr. 3, 2026) (hereinafter "DHS Status Report")(Exhibit A).

Mr. Mohamed underwent an intake evaluation on January 13, 2026, within days of his guilty plea, and was immediately enrolled in a structured outpatient treatment program. Since that date, he has attended his scheduled Individual Therapy sessions, with his clinician noting that he "actively participated." He has attended nine of twelve Group Therapy sessions, presenting in a "cooperative, open manner." He has attended five of ten Relapse Prevention Psychoeducation sessions. Urinalysis administered by DHS during the report period returned one result: negative. Zero positive tests. Zero missed tests. DHS Status Report at 2.

The clinician's overall professional assessment is unambiguous: "Client is compliant to date." Id. That assessment is consistent with the January 30, 2026 urinalysis submitted at the U.S. Probation Office, which yielded negative results for all substances. The treatment plan currently in effect (weekly Group Therapy, weekly Relapse Prevention Psychoeducation, monthly Individual Therapy, and random urinalysis) represents the first structured clinical intervention Mr. Mohamed has ever received for the substance use disorder that has shaped his adult life. It is working. Incarceration would end it.

The three positive marijuana tests between September and November 2025 occurred before his DHS intake evaluation, before individual therapy began, and before his clinical treatment plan was in place. Since enrollment on January 13, 2026, the record is clean. The trajectory is improving, consistently and measurably.

### D. The Caregiver: A Role No One Else Can Fill

Amelahmed Mohamed is 59 years old. She has been diagnosed with an eye disorder and recently suffered a stroke. She has been unable to work for five years. She lives with Osman and her younger son Jamal, age twenty-one, who is completing his GED. Osman's older brother, Hassen, age thirty-eight, is employed full-time with a moving company. Their father has had no meaningful contact with the family for approximately three years. Osman Mohamed is, in practical and daily reality, his mother's primary caregiver.

He transports her to every medical appointment. He picks up her medications. He manages the household's grocery shopping and tends to her daily needs. Her post-stroke aftercare plan requires his active participation in her physical rehabilitation exercises.

Under the recently deleted USSG §5H1.6[2], family ties and responsibilities warranted a downward variance where the defendant's absence would produce a particularly serious hardship on a dependent family member. The standard is not whether some hypothetical alternative caregiver might theoretically be found. The standard is whether this defendant's absence would produce serious hardship. Again, this Court retains the authority, under 18 USC 3553, to consider these circumstances in determining the appropriate sentence.

Osman Mohamed's mother is recovering from a stroke, requires daily transportation, medication management, and participation in physical rehabilitation. The other family member in the same household is a twenty-one-year-old completing his GED. The family member nearby works full-time. Removing Osman Mohamed to federal custody does not simply punish him, it removes his mother's only available daily caregiver during the most medically vulnerable period of her life. Under *Gall* and *Booker,* this Court may treat that reality as a legitimate consideration under § 3553(a)(1).

### E. Employment, Education, and the Path Forward

From 2024 through August 2025, Mr. Mohamed was employed full-time as a mover, earning twenty dollars per hour. He has a demonstrated history of legitimate employment across his adult years. He is currently unemployed because the combination of pending charges and his prior felony record disqualifies him from positions for which he would otherwise be competitive. He is pursuing HVAC certification and a Commercial

---

[2] Section 5H1.6 of the U.S. Sentencing Guidelines, which governed grounds for departure based on Family Ties and Responsibilities, was deleted effective November 1, 2025, by amendment 836. This was done to align with the post-Booker shift away from guideline-based departures toward sentencing variances under 18 U.S.C. § 3553(a), aiming for an outcome-neutral update that simplifies the guidelines while maintaining judicial discretion.

Driver's License, skilled trades pathways that would provide stable, well-compensated, lawful employment. Incarceration forecloses those pathways and ensures that he re-enters the community with diminished prospects and the same underlying conditions unaddressed. Probation preserves the forward momentum that exists right now.

## IV. THE NEED FOR THE SENTENCE IMPOSED

### A. Just Punishment

Probation with home detention and intermittent confinement is punishment. It is a meaningful deprivation of liberty, recognized as such by the statute and the Guidelines. For six months, Mr. Mohamed would be confined to his mother's residence except for approved departures. For another six months, he would report to a designated facility on a schedule set by the Probation Office. His movements throughout the probationary period would be subject to GPS monitoring. He would report regularly to his Probation Officer, submit to random drug and alcohol testing, continue his clinical treatment, and complete 120 hours of community service. These are conditions of real, measurable, and sustained accountability across thirty-six months, which would also allow him to continue to provide personal care for his mother.

### B. Deterrence

The Sentencing Commission's comprehensive recidivism overview found that defendants placed directly on probation had a rearrest rate of 35.1%, meaningfully lower than the 52.5% rate for defendants released from incarceration. See *USSC, Recidivism Among Federal Offenders: A Comprehensive Overview 5 (Mar. 2016).* Specific deterrence is best served by a sentence that keeps Mr. Mohamed in the community, in treatment, accountable to his Probation Officer and to his mother. Removing him from those anchors

does not deter future offending; it removes the conditions that make future offending less likely.

### C. Rehabilitation

The Arlington County DHS outpatient treatment program (weekly group therapy, weekly relapse prevention, monthly individual therapy, random urinalysis, and an upcoming psychiatric evaluation) is the first genuine clinical intervention Mr. Mohamed has received for the substance use disorder and mental health conditions that have been present since adolescence. Incarcerating him ends it. Probation sustains it.

### V. THE ADVISORY GUIDELINES RANGE
### AND THE CASE FOR VARIANCE

The advisory Guidelines range is 24 to 30 months' imprisonment. Total Offense Level 15, Criminal History Category III. The applicable range falls in Zone D of the Sentencing Table, which ordinarily forecloses a straight probationary sentence. See USSG § 5B1.1, comment. n.2.

Under *Booker* and *Gall*, the Zone D placement is a guideline recommendation, not a prohibition on probation. The Court retains full authority to impose probation with special conditions where the § 3553(a) factors, taken together, support that result. Mr. Mohamed's age may support a variance, particularly where home confinement may be equally efficient as and less costly than incarceration.

Mr. Mohamed's family ties and responsibilities are exceptional: a stroke-impaired mother who depends upon her son for daily wellness. Mr. Mohamed's criminal history is driven substantially by marijuana possession sentences that warrant downward relief.

The recently repealed USSG §5K2.0[3] authorized a departure for mitigating circumstances not adequately considered by the Commission, including the combination of documented physical trauma giving rise to opioid dependency, a dependent parent, and the active clinical treatment engagement recently confirmed.

## VI. THE GOVERNMENT'S LIKELY ARGUMENTS AND OSMAN MOHAMED'S RESPONSES

### A. The JSIN Data

JSIN data does not capture a mother recovering from a stroke who depends upon her son daily. It does not capture a clinician's assessment that the defendant is compliant with a treatment program that is, for the first time in his adult life, addressing the conditions that drove his prior contact with the justice system. It does not capture that two of the five matters generating his criminal history score involved conduct that is no longer criminal in the states where it occurred. The 6% of JSIN defendants who did not receive imprisonment had individual circumstances that distinguished them from the median. So does Mr. Mohamed.

### B. Prior Supervision Failures

The government has emphasized that Mr. Mohamed has experienced at least three prior probation revocations and that the Pretrial Services Report did not identify a single instance of successful completion of court-ordered supervision.

---

[3] Section 5K2.0 of the U.S. Sentencing Guidelines, which governed grounds for departure, was deleted effective November 1, 2025, by amendment 836. This was done to align with the post-Booker shift away from guideline-based departures toward sentencing variances under 18 U.S.C. § 3553(a), aiming for an outcome-neutral update that simplifies the guidelines while maintaining judicial discretion.

The prior supervision failures are correct. They occurred across nearly a decade of probationary terms managed almost entirely without clinical treatment for the substance use disorder that drove them. Supervision without treatment is not a rehabilitation strategy; it is a recipe for revocation. Mr. Mohamed has never, until January 2026, been enrolled in a structured outpatient substance abuse treatment program with a licensed clinician, a case manager responsible for his progress, a weekly group therapy schedule, a relapse prevention curriculum, and a monthly individual therapy component all working simultaneously under clinical supervision.

The critical distinction between every prior supervision period and the present is treatment. Ms. Stratton's April 3, 2026 status report documents active participation in every individual therapy session, attendance at nine of twelve group sessions, and negative results on every DHS-administered urinalysis. DHS Status Report at 1–2. The treatment plan going forward provides a structural scaffold that prior supervision periods entirely lacked.

The early positive marijuana tests on pretrial supervision (September, October, and November 2025) occurred before the DHS intake evaluation on January 13, 2026, before individual therapy began, and before the clinical treatment plan was in place. Since treatment began, the drug test record is clean across both pretrial supervision and the DHS program.

## VII. AVOIDING UNWARRANTED SENTENCING DISPARITIES

Section 3553(a)(6) requires the Court to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The JSIN median of twenty-four months reflects judicial

restraint: even among the 94% who received custodial sentences, judges consistently declined to impose sentences above the Guidelines floor.

The § 3553(a)(6) inquiry does not require the Court to imprison every defendant whose JSIN peers were predominantly incarcerated. It requires only that the Court avoid unwarranted disparities. A defendant whose criminal history is substantially driven by marijuana conduct that is no longer criminal in the states where it occurred, whose dependent parent requires daily caregiving during post-stroke recovery, and who is actively engaged in the first clinical treatment of his life, is not similarly situated to the median JSIN case. A sentence structured around those differences is not a disparity. It is the individualized sentencing that § 3553(a) demands.

## VIII. THE PROPOSED SENTENCE

Mr. Mohamed respectfully requests the Court impose the following sentence: a term of thirty-six months of probation pursuant to 18 U.S.C. § 3561(c)(1), with special conditions including six months of home detention to be served in Arlington, Virginia, monitored by GPS; six months of intermittent confinement on a schedule to be established by the United States Probation Office; and 120 hours of community service to be completed within the probationary term. The Court is further requested to impose as conditions of probation: continued participation in the Arlington County Department of Human Services outpatient substance abuse treatment program, including Group Therapy, Relapse Prevention Psychoeducation Group, Individual Therapy, and the upcoming Psychiatric/Medical Evaluation scheduled for April 20, 2026, on the schedule established in the current treatment plan as amended by the treating clinician; mandatory random drug and alcohol testing as directed by the United States Probation

12

Office; active pursuit of HVAC certification or a Commercial Driver's License, with quarterly written progress reports submitted to the Probation Office; compliance with all standard mandatory conditions of probation under 18 U.S.C. § 3563; and GPS monitoring throughout the home detention period. The mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013 is acknowledged.

This sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide Mr. Mohamed with the educational, vocational, and treatment resources that represent, for the first time, a genuine pathway to a different life. It is the sentence that 18 U.S.C. § 3553(a) requires in this case.

Respectfully submitted,

OSMAN MOHAMED
By Counsel

/s/ Pleasant Brodnax
Pleasant S. Brodnax, III
DC Bar 416694
1701 Pennsylvania Ave, NW
Suite 200
Washington, D.C., 20006
(202) 462-1100
pleasant@pleasantbrodnax.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing memorandum was filed on the Court's CM/ECF filing system, this 6th day of April, 2026, sending notice to all counsel of record.

/s/ Pleasant Brodnax
Pleasant S. Brodnax, III

13